We'll hear argument next in No. 071120, Adang v. Umbeck. Mr. Kennehan, when you're ready. May it please the Court. Adang provides a written description of transforming and regenerating cotton with selected foreign DNA. Example 17 describes the transformation and regeneration of cotton with four types of foreign DNA. One type of DNA expresses the insecticidal protein, BT. Two types of DNA express proteins which provide antibiotic resistance. The fourth type of DNA expresses the marker protein, octopene. Thus, Example 17 conveys possession of transforming and regenerating cotton with selected foreign DNA, not restricted to simply insecticidal DNA. The law teaches us that for the purposes of written description, disclosure must be viewed through the perspective of one of ordinary skill in the art. The Umbeck patents are instructive. It is stated, as is understood by those skilled in the art, the demonstration here of the expression of a foreign protein in a cotton plant can readily be repeated with any other foreign gene of interest. This statement is quoted on page 11 of our brief. Let me see, as I understand your argument, you say that to one of ordinary skill in the art, despite the fact that, as the board pointed out, there was detailed descriptions of the use of these procedures to deal with insects in the plant, to keep insects out of it, someone of ordinary skill in the art would know that reading this, that shows that you have possession of a much broader invention covering any foreign DNA. Is that your basic argument? Yes, that's one of our arguments. And consistent with that was the fact that there was a track record with earlier plants, and this is also cited in the Umbeck patents, so that in 1986, a number of plants such as tobacco and petunias had already been transformed and regenerated with a host of foreign genes, for example, to produce viral and herbicide resistance. And this is also acknowledged in a 1987 paper by Umbeck, and this is cited on pages 6 and 7 of our brief. There's also, in example 17, a reference to earlier disclosures of ferrozobite, and this further conveys that the applicants were in possession of putting DNA generically that would produce selected foreign genes in cotton. The ferrozobite disclosure essentially says, if you want to get more information about how example 17 occurs, look to these disclosures. And on the top of page 50 of Umbeck's brief, it is stated that the citations to the ferrozobite application appraised one of a general technique of transforming and regeneration that was used in example 17. So, and then when you go and look at these disclosures, it's clear that it's not limited to simply insecticidal DNA or any combination requiring insecticidal DNA. It provides a great description of the generic... The board held to the contrary, though, didn't it? Yes, it did. And what did you say is that error? Is that an error of law or an error of fact? Did you say that as a matter of fact, it should have come out the other way? Or do you say as a matter of law, when you look to the original specification, it met the description requirement? Well, according to the advanced display systems case, the question of whether there is a corporation by reference sufficient to be part of the written description is a question of law. And it's also to be viewed... I may have had that site wrong, but it is to be viewed... You do contend there was an incorporation by reference, don't you? Yes, I do, Your Honor. Now, what do you say to your opponent's argument that at least eight other places in the 240 specification explicitly stated it's incorporated by reference, and that shows that in Example 17, the party couldn't have meant to incorporate by reference. That is when they say in eight places which is incorporated by reference, the lack of such a statement in Example 17, plus the rather general language indicates there was no incorporation by reference intended in Example 17. The law at the time, Your Honor, first of all, did not require for proper incorporation by reference. Well, it may not have required it, but doesn't the fact that it was done suggest it was not intended where it's not done? Let me change it a little bit. If this were a statute, if we're construing not the specification, if this were a statute, there'd be no question would there that if specific language was incorporated eight times in the text of the statute, you wouldn't look at a ninth instance and say, well, it didn't incorporate it by there, but it should be deemed to incorporate it. The perspective of whether the matter is incorporated by reference according to the law is through the eyes of one of ordinary skill in the art. And it's our contention that one of ordinary skill in the art doesn't go to the NPEP. They don't pay attention to legalistic terms. What they want to do is to look and see, does this reference document provide information that I should be looking at? And the citation in the form of Example 17 is more typical of what is done in a literature article. But I would submit that to one of skill in the art, it's just as sufficient as if the words incorporated by reference. And I don't think they would appreciate any legal significance to the fact that those words have been used earlier. When the board looked at the written description, they dissected the 190-page description of Adang and with basically a word search, and they extracted out passages that referred to invention and insecticide. And from that, they were able to draw a conclusion that there is a focus in the Adang disclosure of providing insecticide into cotton. It's insecticidal DNA or that which would produce it. And we submit, Your Honors, that this fails to take into account the state of the art, that from this distorted view of the application, they jump strictly to the Gentry Gallery type of analysis and try to say there's some sort of disclaimer of inventive subject matter, which is otherwise disclosed and placed into the possession of those skilled in the art. We say this is an improper analysis. Gentry Gallery is inapposite. In Gentry Gallery, the only invention was to place the controls in a specific location. There was no indication of any other place it could go. Here we have specific disclosure of numerous types of DNA, which can go into the cotton. We don't have any sort of disclaimer that was present in Gentry Gallery. And in Gentry Gallery, there was also testimony with regard to how one of ordinary skilled in the art would view the subject matter. Here we have none. So with that, I will reserve the rest of my time for rebuttal. Very good. Thank you, Mr. Cannon. Mr. Stanley? May it please the Court. The basic question here is whether you can take one of Banner's abandoned claims to cotton regeneration and transformation and substitute them into another invention to an entirely different, to another application by different inventors to an entirely different application and whether that can be done. And the Board held, as a matter of written description, that can't be done. And that's completely correct. And written description is a question of fact. It's something that's reviewed when it comes out of a Board decision for substantial evidence. And there's no statement in their briefs, there was no statement here, that substantial evidence does not support the decision that the 240 application as filed is directed to putting insect resistance in plants. The involved claims are directed to transformation and regeneration of only cotton. I mean, the indisputable, inescapable, undeniable fact here is that the 240 application as filed and the Feruzabadi 339 application that was abandoned back in 1992 are directed to different inventions. And I just don't see how, I mean, that should be the end of the analysis here because this is a substantial evidence standard review on a pure question of fact. And the only way that they try and get around it is by the incorporation by reference. And they, well, they tried to get around it by amending the entire disclosure and incorporating the entire Feruzabadi thing into the 240 application. But, I mean, even to the extent it's a matter of law, I mean, I'm not going to attribute this as a conclusion to Judge Friedman, but I think it's clear in this case where you have eight instances in this specification where you incorporate something by reference. Explicitly, where you say incorporate by reference, even if there's no rule, which I'm not sure, for the reasons we state in our brief, is not the rule. I think it's conspicuous and determinative in this case that they didn't do it this time. That when they say eight times, I'm incorporating by reference. Otherwise, there's no bound to what you can bring into an application. As we pointed out, there's 100 references in this biotech area that are mentioned somewhere in here, and to all of a sudden come in after the fact and say, well, that guy was really an inventor on this application, and therefore he's really in here. I mean, they were trying to get around this 135B bar. Their claims were abandoned in 1992, and under 135B, they can only initiate interference if the claim to that application was pending within a year of the time Umbeck issued it in 91 and in 92. And so this whole orchestration of ex parte amendments to this application was to get around the 135B bar, and the bottom line is that defies the very purpose of what a written description requirement is. It's to prevent you from later claiming that's what you did not invent. And I think it's 100% clear that a Dan Kim didn't invent transforming cotton with all foreign genes. To the extent that feruzabadi is being amended to put into this application, the 240 application does not show that as being his invention. The board found, as a matter of fact, that anybody in skilled New York reading that application would say that that's directed to insect-resistant plants. And it's just a different invention. It's apples and oranges. And to try, I mean, I would think it's almost an affront to the system to be able to substitute somebody else's entire invention and bring it in sort of saying through incorporation by reference. And the board found that there wasn't any indication at all that they intended to incorporate anything by reference. And I think that's correct as a matter of law. If you look at what was incorporated from feruzabadi into example 17, there was no need to incorporate anything further to support the idea of putting insect-resistant genes into cotton. So the bottom line, what they ended up doing is incorporating the entire feruzabadi application in lock, stock, and barrel with amendments with the benefit of hindsight. And I just think that's such a perversion of the incorporation by reference doctrine that that just can't possibly be valid as a matter of law, to the extent it's a matter of law. But I think the combination of the fact that written description is a question of fact and there's more than substantial evidence. The board held that the evidence weighs heavily in Unbeck's favor. Everything in that application, from title to example to pictures, everything is directed to putting insect-resistant genes in plants. That's what Adang and Kemp were doing. They were working with BT genes to try and get insect resistance into plants. And to come now and say, I mean, I don't think anybody, no matter whose names were on that application, could pick up that application and read it and say, I discern the invention of this as putting all foreign genes in cotton. I mean, it's just, that's the written description requirement. It's to prevent those later claims from coming in that are directed to something they didn't invent. Now, I suppose you would, I'm confident I know your answer to this, but I want to hear it anyway. If you assume that someone who has, by hypothesis, achieved a breakthrough such that a person of skill in the art would say, well, once you have that, once you have that species, the rest of the genus is child's play. Now, is it your position that, maybe so, but that just goes to obviousness of a subsequent application, for example. It doesn't go to written description of the genus where only the species is described in the initial application. My first answer to that is this isn't a species-genus situation. Yeah, I understand, but I'm thinking of it in this term, because it does seem to me that it has something in common with the species-genus type problem, and I'm trying to see where this fits in that kind of analytic construct. All right, well, from the standpoint of this case, because it is putting all foreign genes into cotton, that is a different example, but the standpoint is it's a different invention. If you look at even their example 17, where they say, we've transformed cotton using essentially Perusavadi's technique. Remember, this was written by the same patent attorney. I mean, these people worked for the same predecessor of the ASNI here at the time. Example 17 was distinguishing what was being done by Perusavadi from what they were claiming here. Getting insect resistance in plants is just a different invention from putting genes into plants so they can prove that they have insect resistance. So it really is an apples and oranges situation. I don't think there's any real applicability to the concept or the tension in the standpoint of when does this disclosure support the broader claims, or when can you put broader claims in beyond the examples that are in the specification, because here, the whole purpose of the written description, and I think why it's still a feature of the law, is the fact that it prevents people from coming in and claiming that which they did not invent. And here, they didn't invent that. That wasn't their invention. Example 17 was pointing out this is something that's in the prior art or something else that somebody else has taught us how to do. That's not what we're doing. We're doing something different. And to come in now, 10 years after the fact. It's now 16 years after the fact. The last guys thought that 10 years was a lot. To come in now, I mean, this is just to get around the fact that they need to find some vehicle by which they could somehow try and make a claim to all transgenic pattern. And their argument that says you've got to look at this at the state of the art, in 1995, that's a perversion of the whole possession law, because in 1995, at the time the 240 application was filed, people knew how to transform cotton because of Umba, to the extent that Daniel Kemp didn't invent all genes in cotton, to the extent that Feruzabadi thought he did. He abandoned his application after he lost an appeal to the board in 92. So this was just a ruse to try and figure out some application that was still pending from their stable of applications that referenced Feruzabadi to try and get claims through the back door to get around 135B. And that, to me, highlights why the possession requirement, these people didn't possess the invention. It wasn't their invention. And to the extent that it's a... I mean, the bottom line boils down to the fact that you cannot take... The Feruzabadi application can't be put into this without violating the written description requirement. The board found that, as a matter of fact, and I don't think there's any basis as a matter of law for this to be an incorporation by reference. Otherwise, you could do exactly this. You could make a claim to something you did not invent. Very well. Thank you, Mr. Stanley. Mr. Kenhan, you have your full rebuttal time. Thank you. There's a lot of issues that were brought out that really had nothing to do with the basic question of written description. And part of a lot of these inventorship issues are simply taken care of because the 95 application names all three. The 95 application as originally filed? It was, I believe, originally filed in the name of 8A and Kemp, but when the claims changed... So Boozy was not on the original application, as I understand it. He only came in much later when they amended the application. Yes, Your Honor. And don't you look to see written description as of the date of the filing? Yes. And an application as filed can include a bit of subject matter which is claimed, both claimed and unclaimed. And the law, particularly Rule 48... But certainly the written description cannot include something that wasn't claimed, can it? I wouldn't think so. Well, it certainly can. Part of the written description means you look to see what's written. And that includes both the claims and the disclosure, and the disclosure can be broader and include subject matter which is not claimed. Well, if you had Feruzabadi's... the effect of the text of Feruzabadi in the original application and the fact that it wasn't claimed would not be disqualifying, but when... I have the same question that Judge Friedman has, which is what significance is there to Feruzabadi's having been added after the fact? Why don't we look to the original disclosure in the original application as what's pertinent, not what happened later? Yes, we do have to look at the disclosure. So what matters who you put in later? I mean, obviously at that point you are interested in trying to broaden the scope. I mean, the question arises as to whether you're broadening the scope of the disclosure with your new claims, right? Well, under the written description we're simply claiming subject matter which was in the application. Right, that's your contention, but the addition of Feruzabadi downstream doesn't help you with that argument, right? Doesn't help me... Doesn't strengthen your argument on what was in the original application.  The claims can be directed to less than all the inventors who were in the application. I understood, but I guess what Judge Friedman and I were both... I speak for myself. What I was confused about was when you started talking about adding Feruzabadi as being important to your argument. It seems to me, correct me if I'm wrong on that, that it's irrelevant, irrelevant to your argument. Why does it matter? It really doesn't. Okay, all right, then we're all on the same page. Okay, and maybe I ought to just kind of summarize what you put in our brief on how all this evolved. In 1986, the scientists at Agrigenetics and primarily A. David Kemp were looking at putting BT into all plants. They wanted to put it into cotton, but in 1986 they didn't have a working example for cotton. Feruzabadi, at that time, from documents of record, when we were requesting interference, was working on specifically trying to get cotton to regenerate. You've got to get to that stage before you can put BT into it. He was successful. He did some basic experiments, got some antibiotic-producing genes and octopine-producing genes in, and filed his application in 1987. Application for what? Just respect to cotton generally? This would be encompassing cotton, yes, and with DNA generally, but the focus primarily there is if you can do this, you want to put BT into cotton. To be able to protect the cotton from the old weevil larvae was very important. People used to treat cotton by spraying with BT. Incorporated in the Feruzabadi application was all that Adang had said about putting BT into plants generally. And that was the application that was rejected, and he then abandoned it, is that correct? Yes, but before it was abandoned, it was incorporated into the 88 Adang application. At that time, Feruzabadi was able to go forward and actually make a working example which had BT in cotton, and that became example 17 of the Adang application, which has very much detail of all the work, and specifically incorporated the earlier Feruzabadi application. And now we go forward. And all of this, whether you look at it from the perspective of plants, which has BT in it, or cotton, which has any kind of selected foreign DNA, all roads lead to cotton with BT in it, because if you have cotton and you can transform it, the first thing you're going to want to put in is BT. If you have the ability to transform plants to get BT in it, one of your first candidates is cotton. These things are not unrelated inventions. They're very close together. They're all part of a common research team, and some technical considerations about who invented what when really don't have anything to do with what the application conveys to one reading it in terms of the technology that they would possess. Very well. Thank you. Thank both counsel. The case is submitted. All rise.